UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br><br>vs.<br><br>JASON ERIC JOHNSON<br><br>          Defendant. | Case No.: 2:13-cr-00395-GMN-GWF<br><br>**FINDINGS &<br>RECOMMENDATIONS**<br><br>**Motion to Suppress (#42)** |

This matter is before the Court on Defendant's Motion to Suppress (#42), filed on June 9, 2014. Co-Defendant Ricky Ricardo Plazola filed a Joinder (#44) in Defendant Johnson's motion to suppress. The Court conducted a hearing in this matter on July 16, 2014.

## BACKGROUND

The indictment in this case charges Defendants with conspiracy to distribute controlled substance analogs in violation of 21 U.S.C. § 846. The controlled substance analogs charged in the indictment are 1-(5-Fluoropentyl)-3-(2,2,3,3-Tetramethylcycolpropoyl) indole, (XLR-11) and (1) 1-(5-Fluoropentyl)-1 H-indole-3-carboxylic acid 8-quinolinyl ester (5F-PB-22). *See Indictment (#18)*.

**A.    Search Warrant Affidavits.**

**1. July 15, 2013 Affidavit:** On July 15, 2013, Bryant Bise, a Special Agent with the Department of Homeland Security, Homeland Security Investigations, executed an affidavit in support of the issuance of several search warrants relating to a criminal investigation of Defendant Jason Eric Johnson, Michael Nilsson, Sin City Distribution, Nilsson N Nilsson and Sin City Cleaning. *Government Exhibit P-2, Affidavit*, ¶¶ 1-4. The targeted premises included, among

others, residences occupied by Defendant Johnson or Mr. Nilsson, as well as a suspected drug lab located on Highland Drive in Las Vegas, Nevada.

Special Agent Bise stated that he was working closely with Detective Stephen Bourque of the Las Vegas Metropolitan Police Department ("LVMPD") who was assigned to the Synthetic Pharmaceutical Enforcement and Response Team ("SPEAR") which consists of LVMPD detectives. SPEAR targets synthetic drug trafficking organizations operating in Clark County, Nevada or which have ties to the Las Vegas Valley. ¶ 2. Agent Bise's affidavit provided a general description of the "Method of Operation of Drug Traffickers," including those involved in the distribution of controlled substance analogs. ¶¶ 7-16.

The affidavit provided a "Probable Cause: Chronological Synopsis" beginning with the following paragraph:

> 17. On February 12, 2013, Las Vegas Metropolitan Police Department (LVMPD) detectives conducted surveillance on Suspect Residence 3. Detective Bourque, along with other detectives, seized and searched the trash. During the trash search, Detective Bourque located a Federal Express (FedEx) package addressed to Jay Johnson at 4805 East Montara Circle, Las Vegas, Nevada (Suspect Residence 3). In addition, several hand-written customer lists were located that showed customer locations and associated dollar amounts. Also located in the trash were hand-written notes with names of different types of "spice", for example: "Godfather Platinum" and "High Times."

*Government Exhibit P-2, Affidavit.*

The affidavit also stated that "Detective Bourque, along with the detectives, observed that the trash for this location was in front of the residence, at the curb, and was placed out for trash pick-up." ¶ 60. The officers found handwritten notes in the trash which appeared to document sales of spice products to various individuals, businesses and addresses. ¶¶ 61-65.

The affidavit set forth the information that the law enforcement agents developed between February 12, 2013 and June 23, 2013. This included information that packages mailed to Defendant Johnson and Mr. Nilsson from a chemical company in China contained substances that tested positive for the presence of synthetic cannabinoids. ¶¶ 37, 38. Through anonymous tips, surveillance, and the execution of state court search warrants, the agents determined that Defendant Johnson and Mr. Nilsson sold or delivered spice products to various smoke shops. ¶¶ 18-27. The

agents also determined that Defendant Johnson was operating a "spice" lab in a building on Highland Drive in Las Vegas. ¶¶ 25-26, 40-46. Based on the information contained in the affidavit, Magistrate Judge Ferenbach issued search warrants that were executed by law enforcement agents on or about July 17, 2013.

**2. October 8, 2013 Affidavit:** On October 8, 2014, Special Agent Bise applied for another federal search warrant relating to the subject investigation. *Government Exhibit P-3, Bise Affidavit.* Special Agent Bise requested the issuance of a search warrant for an office/warehouse unit located at 628 Middlegate Road, Unit 7, in Henderson, Nevada. Agent Bise stated that during the execution of federal search warrants on July 17, 2013, detectives seized over 200 kilograms of packaged and bulk suspected spice, along with $642,000 in currency and a firearm. ¶ 18. Agent Bise further stated that on August 24, 2013, the police stopped a vehicle driven by Defendant Ricky Plazola who was a subject of the criminal investigation. During the vehicle stop, officers discovered approximately 18 kilograms of suspected spice which had the same brand names as the products seized from the premises on Highland Drive on July 17, 2013. ¶ 19.

The affidavit stated that on September 3, 2013, Homeland Security Investigations was notified by the Henderson, Nevada Police Department that a telephone tip was received regarding a light industrial warehouse located at 628 Middlegate Road, Unit 7, Henderson, Nevada. The tipster stated that the warehouse was rented by Defendant Johnson and was being used for possible spice production. The tipster stated that Defendant Johnson was driving a Cadillac Escalade which the officers identified as being registered to Defendant Johnson. The tipster also observed a Mercedes automobile parked at the warehouse which the officers determined had previously been registered to Defendant Johnson. ¶ 20. Detective Bourque interviewed the tipster on September 6, 2013. The tipster stated that during the late afternoon and evening there was a strong odor coming from the warehouse. The tipster also observed that the occupants moved into the warehouse with a yellow rental truck which backed into the warehouse and closed the doors. A short time later the tipster observed "a strong chemical fruity odor." The tipster observed luxury vehicles frequently parked at the warehouse. ¶ 21.

. . .

On September 12, 2013, detectives were notified that Defendant Johnson would be making a delivery of spice to a smoke shop. The detectives thereafter observed Defendant Plazola make a delivery of spice to a smoke shop in a large duffel bag. After making the delivery, Defendant Plazola drove to the warehouse locate at 628 Middlegate Road, Unit 7. Defendant Plazola used a key to enter the warehouse. Plazola was observed leaving the warehouse a short time later and then making additional deliveries of spice to two additional smoke shops. ¶ 23.

On September 13, 2013, Agent Bise and Detective Bourque went to the area of 628 Middlegate Road, Unit 7 where they spoke to the telephone tipster. The officers observed a strong scent of the chemical fruity smell in the area. The odor was "consistent with smells produced by a spice manufacturing facility." ¶ 23. Detective Bourque went near the warehouse's roll-up door and smelled the odor emitting from the business. *Id.* On September 18, 2013, the tipster notified the officers that the warehouse was again emitting the odor. The officers conducted brief surveillance and observed three vehicles parked in front of the warehouse. ¶ 24. The officers determined that the electricity service for the warehouse at 628 Middlegate Road, Unit 7 was in the name of Michael Powers who was the owner of the business on Highland Drive where a spice production facility was previously located. ¶ 25. On September 19, 2013, officers observed Defendant Johnson arrive at and enter the warehouse at 628 Middlegate Road, Unit 7. Defendant Johnson and another individual were later observed leaving the warehouse, each with two large plastic bags which they loaded into the Cadillac Escalade. Defendant Johnson then left the area. ¶ 26.

The affidavit stated that on October 1, 2013, Magistrate Judge Leen issued a search warrant for 628 Middlegate Road, Unit 7, which authorized the warrant to be executed in the daytime. During subsequent surveillance, however, the officers observed that Defendant Johnson arrived at the warehouse during the nighttime after 10:00 p.m. Agent Bise therefore requested that the Court authorize a nighttime search of the warehouse. ¶¶ 28-30. The search warrant was issued by Magistrate Judge Hoffman on October 8, 2013.

**3. October 16, 2013 Affidavit:** On October 16, 2013, Agent Bise applied for warrants to search a small office/warehouse unit located at 2325 Western Avenue, Unit 8, Las Vegas, Nevada and a residence located at 3665 Via Certaldo, Henderson, Nevada. *Government Exhibit P-4, Bise*

*Affidavit.* Agent Bise's October 16, 2013 affidavit set forth the same general information regarding the "Method of Operation of Drug Traffickers" that was included in the previous affidavits. ¶¶ 7-12. This included the statement that "[p]ersons involved in the production of synthetic cannabinoids or synthetic cathinones (which are analogues of controlled schedule I substances) typically illegally import analog substances into the United States. . . . These persons typically spray the analog substances onto an organic material and allow it to dry. These persons then sell the altered organic compound for human consumption under the common street name 'spice.'" ¶ 7.g. The affidavit stated that controlled substance importers, traffickers and distributors typically maintain records relating to their illegal activities, including maintaining such records at the residences where they live. ¶¶ 7.d, 8.c. The affidavit also stated that spice is often manufactured in clandestine labs located in residences, businesses, hotel rooms, garages and warehouses. ¶ 11.

The October 16th affidavit recited the same factual information that was included in the affidavit in support of the search warrant issued by Magistrate Judge Hoffman on October 8, 2013. ¶¶ 17-27. The affidavit further stated that law enforcement officers conducted extensive surveillance of 628 Middlegate Road, Unit 7 on October 8, 9 and 10, 2013 during which no activity was observed. The officers therefore determined it had been vacated by the suspects. ¶ 28.

Agent Bise further stated that during the July 17, 2013 execution of a federal search warrant at another of Defendant Johnson's residences located at 3950 Sandhill, #135, agents seized $68,500 in currency, a 9mm handgun and a laboratory report regarding various spice products. The agents also found a lease agreement in Mr. Johnson's name for the residence at 3665 Via Certaldo, Henderson, Nevada for the period July 2, 2013 to June 30, 2014. ¶ 18. On October 15, 2013, law enforcement officers conducted surveillance at 3665 Via Certaldo. They observed Defendant Johnson leave that residence in the Cadillac Escalade and drive throughout the Las Vegas metropolitan area with no apparent purpose. Defendant Johnson was also "observed driving in an erratic manner and in a manner frequently observed by law enforcement when targets are attempting to lose any vehicular surveillance." ¶ 29. The officers also determined that the electrical service at 3665 Via Certaldo was in Defendant Johnson's name. ¶35.

. . .

On October 15th, the officers observed Defendant Johnson travel to the vehicle rental center for McCarran International Airport. Defendant Johnson left the car rental center carrying paperwork. He then drove to a bank before returning to 3665 Via Certaldo. Approximately 30 minutes later, Defendant Johnson left the residence and drove to another bank before returning to the vicinity of the vehicle rental center. During this trip, Defendant Johnson was again observed engaging in counter surveillance driving. He parked his Cadillac Escalade in a parking lot and then walked to the vehicle rental center, carrying a small brown or tan duffel bag. Defendant Johnson retrieved a green minivan at the rental center and then drove to 2325 Western Avenue #8, Las Vegas, Nevada. While enroute to that location, Defendant Johnson again drove in a manner commonly utilized by individuals who are attempting to elude law enforcement. ¶¶ 30-32.

Approximately 30 minutes after Defendant Johnson arrived at 2325 Western Avenue #8, a law enforcement officer observed a Toyota Cambry vehicle, which had previously been observed at 628 Middlegate Road, Unit 7, arrive at the office/warehouse. The occupant of the Toyota Cambry knocked on the door and was admitted into the office/warehouse. ¶ 33. On October 16, 2013, law enforcement agents went to the warehouse at 2325 Western Avenue #8, and after exiting their vehicle "were able to smell the fruity smell commonly associated with the manufacturing of spice." ¶ 34.

On October 16, 2013, the undersigned magistrate judge issued search warrants authorizing searches of the premises located at 2325 Western Avenue, Unit 8, Las Vegas, Nevada and 3665 Via Certaldo, Henderson, Nevada. Although not specified in Defendant's motion to suppress, law enforcement officers apparently seized evidence from both locations which Defendant now seeks to suppress on the grounds that the October 16, 2013 search warrants were not supported by probable cause.

B.      **Evidentiary Hearing.**

The Court conducted an evidentiary hearing on July 16, 2014 limited to the issues of whether the trash search at 4805 East Montara Circle on February 12, 2013 violated the Fourth Amendment and whether Defendant Johnson has standing to challenge that search.

. . .

1    Detective Stephen Bourque testified that he has worked as a detective in the LVMPD
2 Narcotics Bureau for the past six and a half years.  Detective Bourque was asked if he was familiar
3 with the term "trash pull."  He stated that a trash pull involves police officers going to a location
4 where trash cans have been placed out on the sidewalk/curb or at another publicly accessible place
5 for pick-up by the trash disposal service.  Officers will search the trash for evidence and if they find
6 any will secure it as part of their investigation.  Detective Bourque testified he and two other
7 detectives went to 4805 East Montara Circle on February 12, 2013 to conduct the trash pull.  They
8 arrived at the residence at 9:45 p.m.  They selected that day for the trash pull because it was a trash
9 pick-up day.  Detective Bourque testified that there were trash containers in front of the other
10 houses on the street.  Detective Bourque was shown a photograph of the residence at 4805 East
11 Montara Circle which shows the sidewalk, driveway and front of the house.  He testified that the
12 trash can or cans were located on the sidewalk at the curb on the left side of the driveway as one
13 faces the house.  *See Government Exhibit P-1, Photograph.*

14    Detective Bourque personally conducted the trash pull.  He testified that there was a Federal
15 Express box on top of the trash container which was addressed to Defendant Johnson at 4805 East
16 Montara Circle.  Detective Bourque did not recall whether there was a lid on the trash can.
17 Detective Bourque looked through the trash can and found papers which he seized.  Detective
18 Bourque did not have a clear recollection whether the items he seized were located in plastic bags
19 inside the trash can.  He acknowledged that his report indicated that seized items were found in
20 plastic bags.  Detective Bourque testified that he stood on the curb or the sidewalk as he performed
21 the trash pull.  Detective Jones was standing nearby.  Detective Bourque recalled Detective Jones
22 standing to his left.  He did not recall seeing Detective Jones step over the line that divides the
23 sidewalk from the driveway in front of the house.

24    Detective Bourque testified that he had conducted surveillance at 4805 East Montara Circle
25 prior to February 12, 2013 and had seen Defendant Johnson at the residence.  He could not state
26 whether Defendant Johnson had "free access" to the residence.  He observed Defendant Johnson
27 arrive at the residence and approach the front door, but could not state whether he entered the
28 residence on his own with a key or was admitted by someone into the residence.

Defendant Jason Johnson testified that the house at 4805 East Montara Circle is his parents' residence. He had a key to the house in February 2013 and had permission to enter the house as he chose. He was present in the home at times when no one else was present. He also testified that he has slept at 4805 East Montara Circle on occasion. Other than his parents, he was not aware of anyone else who had similar access to the residence. Mr. Johnson testified that he kept a few jackets and sweaters at the residence. On cross-examination, Mr. Johnson acknowledged that the house is titled in his parents' names. The utility services for the house were also in his parents' names. Mr. Johnson acknowledged that 4805 East Montara Circle was not his primary residence. He testified that he did not stay at the 4805 East Montara Circle residence "full time," but he did stay there "here and there." Mr. Johnson testified that he had his mail sent to his parents' house. He also had a 2012 Nevada certificate of motor vehicle title that listed 4805 East Montara Circle as his address. *Defendant's Exhibit A.*

## DISCUSSION

**1.    Whether the Trash Search Violated the Fourth Amendment.**

The Fourth Amendment to the United States Constitution protects the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures. The Fourth Amendment further provides that no warrants shall issue, but upon probable cause, supported by oath or affirmation.

The Government asserts that Defendant Johnson does not have standing to challenge the trash search at 4805 East Montara Circle. As stated in *United States v. Goldstein*, 2013 WL 5408265, *1, 2 (D.Nev. 2013):

> "The Fourth Amendment protects people rather than places, but 'the extent to which the Fourth Amendment protects people may depend upon where those people are.'" *United States v. Nerber,* 222 F.3d 597, 599 (9th Cir. 2000) (quoting *Minnesota v. Carter,* 525 U.S. 83, 88 (1998)). "A criminal defendant may invoke the protections of the Fourth Amendment—including the exclusionary rule—'only if he can show that he had a legitimate expectation of privacy in the place searched or the item seized.'" *United States v. Borowy,* 577 F.Supp.2d 1133, 1136 (D.Nev. 2008) *aff'd,* 595 F.3d 1045 (9th Cir. 2010) (quoting *United States v. Ziegler,* 474 F.3d 1184, 1189 (9th Cir. 2007)). To establish a legitimate expectation of privacy, a criminal defendant "must demonstrate a subjective expectation that his activities would be private, and he must show that his expectation

8

1
2
was 'one that society is prepared to recognize as reasonable.'" *Nerber,* 222 F.3d at 599 (quoting *Bond v. United States,* 120 S.Ct. 1462, 1465 (2000)).

3
4
5
6
7
8
"[T]o say that a party lacks [F]ourth [A]mendment standing is to say that *his* reasonable expectation of privacy has not been infringed. It is with this understanding that we use 'standing' as a shorthand term." *United States v. Pulliam,* 405 F. 3d 782, 785–86 (9th Cir. 2005) (quoting *United States v. Taketa,* 923 F.2d 665, 669–70 (9th Cir. 1991)) (citation omitted) (emphasis in original). "A person who is aggrieved by an illegal search and seizure only through ... damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed." *Pulliam,* 405 F. 3d at 785–86 (quoting *Rakas v. Illinois,* 439 U.S. 128, 134 (1978)). . . .

9   In *Minnesota v. Olson*, 495 U.S. 91, 109 S.Ct. 1684, 1688 (1990), the Court, citing *Jones v.*
10  *United States,* 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960) and *Rakas v. Illinois,* 439 U.S.
11  128, 134, 99 S.Ct., 421, 429–433 (1978), indicated that facts similar to those testified to by
12  Defendant Johnson in this case are sufficient to establish a reasonable expectation of privacy to
13  challenge the search of a residence. The Court quoted the following facts from *Jones* as sufficient
14  to confer standing:

15
16
17
18
19
"[Jones] testified that the apartment belonged to a friend, Evans, who had given him the use of it, and a key, with which [Jones] had admitted himself on the day of the arrest. On cross-examination [Jones] testified that he had a suit and shirt at the apartment, that his home was elsewhere, that he paid nothing for the use of the apartment, that Evans had let him use it 'as a friend,' that he had slept there 'maybe a night,' and that at the time of the search Evans had been away in Philadelphia for about five days." *Id.,* at 259, 80 S.Ct., at 730.

20  Here, Defendant Johnson testified that he had a key to his parents' residence, that they gave
21  him permission to enter and stay in the residence as he pleased, and that he occasionally stayed
22  overnight in the house. He also kept some clothing in the house. Defendant testified that he
23  received mail at the residence. The FedEx box found during the trash search was addressed to him
24  at that address. Defendant also had a 2012 certificate of title for a motor vehicle that listed 4805
25  East Montara Circle as his address. These facts provide sufficient evidence to support a conclusion
26  . . .
27  . . .
28  . . .

that Defendant had a reasonable expectation of privacy in the house and its curtilage in February 2013.[1]

"Where the government physically occupie[s] private property for the purpose of obtaining information, that is a 'search' within the meaning of the Fourth Amendment." *United States v. Perea-Rey*, 680 F.3d 1179, 1184 (9th Cir. 2012), quoting *United States v. Jones*, --- U.S. ---, 132 S.Ct. 945, 949, 181 L.Ed.2d 911 (2012). Warrantless searches and seizures inside a home are presumptively unreasonable. *Id.,* citing *Payton v. New York*, 445 U.S. 573, 586, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). "Because the curtilage is part of the home, searches and seizures in the curtilage without a warrant are also presumptively unreasonable." *Id.,* citing *Oliver v. United States*, 466 U.S. 170, 180, 104 S.Ct. 1735, 80 L.Ed.2d 214 (1984).

The curtilage is defined as an area that, like the inside of the house, harbors the intimate activity associated with the sanctity of a person's home and the privacies of life. *United States v. Struckman*, 603 F.3d 731, 738 (9th Cir. 2010), citing *United States v. Dunn*, 480 U.S. 294, 300, 107 S.Ct. 1134, 94 L.Ed.2d 326 (1987). In determining whether an area is part of the curtilage, the court examines four non-exclusive factors: (1) the proximity of the area claimed to be curtilage to the home, (2) whether the area is included within an enclosure surrounding the home, (3) the nature of the uses to which the area is put, and (4) the steps taken by the resident to protect the area from observation by people passing by. *United States v. Perea-Rey*, 680 F.3d at 1184, citing *United States v. Dunn*, 480 U.S. at 307. *Perea-Ray* further states that "[t]hese factors do not yield a definite answer; rather they guide [us] in determining whether the area is so intimately connected to the home that it should fall under the umbrella of the Fourth Amendment's protections." *Id.* at 1184. The public sidewalk and curb in front of a house does not reasonably fall within the scope of the curtilage under the factors set forth in *Dunn*.

In *California v. Greenwood*, 486 U.S. 35, 108 S.Ct. 1625, 1629 (1988), the Supreme Court held that an individual does not have a reasonable expectation of privacy in trash left for collection

---

[1] Co-Defendant Plazola joined in Defendant Johnson's motion to suppress. There is no evidence that Mr. Plazola had any connection to 4805 East Montara Circle. He has no standing to challenge a search of that residence or its curtilage.

in an area accessible to the public, such as at the curb or on the sidewalk in front of the house. In *United States v. Bowman*, 215 F.3d 951, 963 (9th Cir. 2000), the court, following *Greenwood*, held that the defendant had no legitimate expectation of privacy in garbage that was left on the curb for pick-up by the garbage company. The court also failed to see how defendant had a more legitimate expectation of privacy in sealed garbage left curbside than unsealed garbage left curbside. Thus, whether or not there was a lid on the trash can, or whether the items seized by Detective Bourque were located in closed plastic bags, is irrelevant.

In *Florida v. Jardines*, --- U.S. ---, 133 S.Ct. 1409, 1415 (2013), the Supreme Court held that a police officer conducted a search within the meaning of the Fourth Amendment when he took a trained narcotics dog onto the front porch of defendant's residence to sniff for the presence of narcotics. The dog approached the front door and alerted to the presence of narcotics inside the residence. On that basis, the police obtained a warrant to search the house. In holding that the dog sniff was an illegal warrantless search, the Court stated that the front porch of a house "is the classic exemplar of an area adjacent to the home to 'which the activity of home life extends.'"

Defendant argues that *Jardines* supports a conclusion that the trash search violated the Fourth Amendment. *Jardines* would be relevant if the police searched a trash container located within the curtilage of the house. For example, the occupant of a house may have a legitimate expectation of privacy in the contents of a trash can located in the enclosed back yard of his residence. In this case, however, the trash can was located on the sidewalk, near the curb at a location generally understood to be for pick-up by the garbage company. The search of the trash container did not violate the Fourth Amendment. Defendant's motion to suppress on this ground therefore fails.

**2. Whether the October 16, 2013 Search Warrants were Supported by Probable Cause, and, if not, Whether the Warrants can be Upheld Under the Good Faith Exception to the Exclusionary Rule.**

Defendant Johnson argues that Agent Bise's October 16, 2013 affidavit did not set forth sufficient facts to support a finding of probable cause to search the premises at 2325 Western Avenue, Unit 8, Las Vegas, Nevada and 3665 Via Certaldo, Henderson, Nevada.

. . .

1    The Government concedes that Defendant Johnson has standing to challenge the search
2 warrant for his residence at 3665 Via Certaldo, but disputes his standing to challenge the search
3 warrant for the office/warehouse at 2325 Western Avenue, Unit 8.  The Defendant has the burden
4 of demonstrating that he had "a subjective expectation of privacy in the area searched and that his
5 expectation is one that society recognizes as objectively reasonable. *United States v. SDI Future*
6 *Health, Inc.*, 568 F.3d 684, 695 (9th Cir. 2009), citing *United States v. Sarkisian*, 197 F.3d 966,
7 986 (9th Cir. 1999).  Defendant Johnson submitted a declaration in support of his motion to
8 suppress in which he states that on or about October 16, 2013, he was a leasee at the real property
9 located at 2325 Western Avenue, Unit 8, that the unit was not open to the public and that he had an
10 expectation of privacy in the unit.  *Reply (#50), Declaration of Jason Eric Johnson.*  The
11 Government has not submitted any evidence to rebut Mr. Johnson's declaration.  The Court finds
12 that Defendant Johnson has met his burden to show that he had a reasonable expectation of privacy
13 in the office/warehouse at 2325 Western Avenue, Unit 8.  He therefore has standing to challenge
14 the existence of probable cause to support the search warrant for those premises.

15    "A search warrant, to be valid, must be supported by an affidavit establishing probable
16 cause." *United States v. Mayer*, 560 F.3d 948, 958 (9th Cir. 2009), quoting *United States v.*
17 *Jawara*, 474 F.3d 565, 582 (9th Cir. 2007).  In determining whether an affidavit establishes
18 probable cause, the court's review is limited to the information contained within the four corners of
19 the challenged affidavit. *Crow v. County of San Diego*, 608 F.3d 406, 434 (9th Cir. 2010), citing
20 *United States v. Stanert*, 762 F.2d 775, 778 (9th Cir. 1985).  The July 15, 2013 and October 8, 2013
21 search warrant affidavits were not attached to the October 16, 2013 search warrant affidavit.
22 Therefore, any information included in those affidavits, which was not contained in the October
23 16th affidavit, was not available for consideration by the undersigned magistrate judge when he
24 issued the search warrants on October 16, 2013.  Nor may the court consider information contained
25 in the earlier affidavits that was not included in the October 16, 2013 affidavit in deciding whether
26 the search warrants were supported by probable cause.  *See United States v. Underwood*, 725 F.3d
27 1076, 1087 (9th Cir. 2013).
28    . . .

1    The existence of probable cause is determined by the totality of the circumstances.
2 Probable cause is a fluid concept which turns on the assessment of probabilities in particular factual
3 contexts, not readily or even usefully reduced to a neat set of legal rules. *Illinois v. Gates,* 462 U.S.
4 213, 231, 103 S.Ct. 2317, 2328-29, 76 L.Ed.2d 527 (1983)*; United States v. Adjani,* 452 F.3d 1140,
5 1145 (9th Cir. 2006). "[P]robable cause means 'fair probability,' not certainty or even a
6 preponderance of the evidence.  In short, a magistrate judge is only required to answer the
7 'commonsense, practical question whether there is 'probable cause' to believe that contraband or
8 evidence is located in a particular place' before issuing a search warrant." *United States v. Gourde,*
9 440 F.3d 1065, 1069 (9th Cir. 2006), quoting *Gates*, 462 U.S. at 230, 246, 103 S.Ct. 2317.  Law
10 enforcement officers may draw upon their experience and expertise in determining the existence of
11 probable cause. *United States v. Garza*, 980 F.2d 546, 550 (9th Cir. 1992).  Likewise, judges may
12 consider the officers' experience and expertise as to particular factual matters in determining
13 whether probable cause exists to support the issuance of the warrant. *United States v. Crozier*, 777
14 F.2d 1379, 1380 (9th Cir. 1985); *United States v. Fannin*, 817 F.2d 1379, 1382 (9th Cir. 1987).
15    As set forth in Agent Bise's October 16, 2013 affidavit, the execution of the previously
16 issued search warrants on July 17, 2014 resulted in the seizure of over 200 kilograms of packaged
17 and bulk suspected spice, $642,000 in currency, and a firearm.  On that date, $68,500 in currency, a
18 9 mm handgun and a laboratory report for spice products were seized from Defendant Johnson's
19 residence at 3950 Sandhill, #135 where the agents also found a lease agreement in his name for the
20 residence at 3665 Via Certaldo. *Government Exhibit P-4, Bise Affidavit*, ¶ 18.
21    Following the searches on July 17, 2013, law enforcement agents developed information
22 that Defendant Johnson and others continued to engage in the production and distribution of spice.
23 On August 24, 2013, police officers seized spice products from Defendant Plazola's vehicle which
24 had the same brand names as the items seized during the search of the Highland Drive location on
25 July 17, 2013. *Government Exhibit P-4, Bise Affidavit*, ¶ 19.  In September 2013, the agents
26 developed evidence through a tipster that Defendant Johnson and others were operating a spice
27 production facility in a warehouse at 628 Middlegate Road, Unit 7.  Agents observed Defendants
28 Plazola make a spice delivery to a smoke shop and then return to this warehouse.  Defendant

Johnson, and his vehicle, were also observed at this warehouse. ¶¶ 22, 26, 27.  While conducting surveillance outside this warehouse, Detective Bourque observed a chemical fruity odor emanating from the warehouse that was consistent with smells produced by spice manufacturing.  ¶ 23.

After law enforcement agents determined that the suspects had vacated 628 Middlegate Road, Unit 7, they conducted further surveillance of Defendant Johnson.  On October 15, 2013, they observed Defendant Johnson depart the residence at 3665 Via Certaldo.  While tailing his vehicle, the agents observed Defendant Johnson engage in driving behavior which indicated that he was attempting to elude police surveillance.  ¶ 29.  The agents observed Defendant Johnson travel to a vehicle rental facility at McCarran Airport where he apparently rented a vehicle.  He thereafter returned to 3665 Via Certaldo in his own vehicle where he remained for thirty minutes.  Defendant Johnson again left the residence and drove in a manner to avoid being followed by law enforcement.  He returned to the vicinity of the vehicle rental center, parked his Cadillac Escalade, and then walked to the rental center where he picked up a van which he then drove to the office/warehouse located at 2325 Western Avenue, #8.  During this trip, Defendant Johnson again engaged in counter-surveillance driving.  ¶¶ 30-32.  After Defendant Johnson entered the the office/warehouse, agents observed other individuals arrive at the office/warehouse in a vehicle that had been previously observed during surveillance at 628 Middlegate Road, Unit 7.  ¶ 33.  The following day, October 16, 2013, law enforcement agents went to 2325 Western Avenue, #8 where they smelled the same odor associated with the manufacture of spice.  ¶ 34.

Although the information contained in the October 16, 2013 affidavit was by no means conclusive that a spice lab would be found at 2325 Western Avenue, #8, the Ninth Circuit has stated that "[d]irect evidence that contraband or evidence is at a particular location is not essential to establish probable cause to search the location."  *United States v. Fannin*, 817 F.2d at 1382, quoting *United States v. Angulo-Lopez*, 791 F.2d 1394, 1399 (9th Cir. 1986).  The court in *Fannin* further quoted *United States v. Peacock*, 761 F.2d 1313, 1315 (9th Cir.), *cert. denied,* --- U.S. ---, 106 S.Ct. (1985) that:

> The magistrate need not determine that the evidence sought is *in fact* on the premises to be searched . . . or that the evidence is more likely

14

> than not to be found where the search takes place. . . . The magistrate need only conclude that it would be reasonable to seek the evidence in the place indicated in the affidavit.

In *Peacock*, the investigation leading to the arrest of the defendants began with the discovery in the desert of barrels containing the remnants of methamphetamine. Witnesses reported that a certain U-haul truck had been in the vicinity where the barrels were found. The truck was traced to defendant. After its return to the rental company, the truck had a distinctive order associated with methamphetamine and there were barrel imprint rings visible on the truck bed. Based on that evidence, the officers obtained a search warrant for Defendant's residence. Here, the October 16, 2013 affidavit provided reasonable grounds for the magistrate judge to conclude the spice production lab had been transferred to the premises at 2325 Western Avenue, #8 and that evidence relating to the production or distribution of spice would be found on those premises. The Court therefore finds that its original determination that probable cause existed to support the search at 2325 Western Avenue, #8 was correct.

The Court also finds that the October 16, 2013 affidavit provided probable cause to search the residence at 3665 Via Certaldo. The surveillance conducted on October 15, 2013 established Defendant Johnson's physical presence at that residence which was leased in his name and had utility service in his name. The Ninth Circuit has stated that in the case of drug dealers, evidence is likely to be found where the dealers live. *United States v. Angulo-Lopez*, 791 F.3d 1394, 1399 (9th Cir. 1986), citing *United States v. Valenzuela*, 596 F.2d 824, 829 (9th Cir.), *cert. denied*, 441 U.S. 965, 99 S.Ct. 2415 (1979); *United States v. Terry*, 911 F.2d 272, 275-76 (9th Cir. 1990); and *United States v. Fernandez*, 388 F.3d 1199, 1253-54 (9th Cir. 2004). Besides Agent Bise's general statement that persons engaged in spice production and distribution keep records of their activities in their residence, the affidavit also stated that currency, records relating to spice and a firearm were found during the search of Defendant Johnson's other residence on July 17, 2013. The evidence in this case was therefore more than sufficient to support a finding of probable cause to search the residence at 3665 Via Certaldo.

Assuming that the October 16, 2013 affidavit did not provide sufficient information to support a finding of probable cause, the Government argues that the searches should still be upheld

15

based on the good faith reliance exception to the exclusionary rule established in *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405 (1984). "For the good faith reliance exception to apply, the officers must have relied on the search warrant in an objectively reasonable manner." *United States v. Krupa*, 658 F.3d 1174, 1179 (9th Cir. 2011), quoting *United States v. Crews*, 502 F.3d 1130, 1135 (9th Cir. 2007). "The affidavit must establish at least a colorable argument for probable cause for the exception to apply." *Id.* (internal quotation marks omitted). Conversely, the good faith reliance exception will not apply "where the affidavit is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *United States v. Underwood*, 725 F.3d at 1085. The October 16, 2013 affidavit provided at least a colorable argument for probable cause to search the residence at 2665 Via Certaldo and the office/warehouse at 2325 Western Avenue, #8. The exclusionary rule therefore does not apply in this circumstance.

## CONCLUSION

The trash search conducted on February 12, 2013 did not violate the Fourth Amendment because the trash can was placed on the sidewalk at or near the curb for trash collection. Defendant Johnson therefore had no reasonable expectation of privacy in the contents of the trash can. The October 16, 2013 affidavit provided probable cause to support the issuance of search warrants for the premises at 2325 Western Avenue, Unit 8, Las Vegas, Nevada and 3665 Via Certaldo, Henderson, Nevada. Assuming, however, that the affidavit lacked sufficient information to support a finding of probable cause, it still contained sufficient information to support a colorable argument for probable cause and for the officers' good faith reliance on the validity of the search warrants. Accordingly,

## RECOMMENDATION

**IT IS RECOMMENDED** that Defendant Johnson's Motion to Suppress (#42) and Co-Defendant Plazola's Joinder (#44) be **denied**.

## NOTICE

Pursuant to Local Rule IB 3-2, any objection to this Finding and Recommendation must be in writing and filed with the Clerk of the Court within fourteen (14) days. The Supreme Court has held that the courts of appeal may determine that an appeal has been waived due to the failure to

file objections within the specified time.  *Thomas v. Arn*, 474 U.S. 140, 142 (1985).  This circuit has also held that (1) failure to file objections within the specified time and (2) failure to properly address and brief the objectionable issues waives the right to appeal the District Court's order and/or appeal factual issues from the order of the District Court.  *Martinez v. Ylst,* 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).

DATED this 29th day of July, 2014.

_____
GEORGE FOLEY, JR.
United States Magistrate Judge